IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MALEA BYRD, | § | |
| | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:19-CV-4473 |
| | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| THE CITY OF MADISONVILLE, TEXAS, | § | |
| MADISONVILLE CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| JOHNNY CORNELIUS AND GEORGE | § | |
| SWEETIN, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Malea Byrd and complaining of Defendants, the CITY OF MADISONVILLE, Texas (the "City of Madisonville"), Madisonville Consolidated Independent School District ("MCISD"), Johnny Cornelius ("Cornelius") and George Sweetin ("Sweetin"), individually and in their official capacity, and for cause would show the Honorable Court as follows:

## I.     NATURE OF THE ACTION

1.     This is an action brought by the Plaintiff against the CITY OF MADISONVILLE, MCISD, Cornelius and Sweetin for their use of excessive force resulting in the injuries sustained by Malea Byrd ("Byrd") under the color of law in violation of her individual rights under the Fourth and Fourteenth Amendments of the United States Constitution and in violation of her civil rights pursuant to 42 U.S.C. § 1983.

2.      Plaintiff alleges that the Madisonville City Council, City Manager, Camilla Viator ("Viator"), who is the chief executive officer for the CITY OF MADISONVILLE and the head of the administrative branch of the city government and is responsible to the city council for the proper administration of all affairs of the city placed under his control by the Madisonville City Charter or by ordinance or resolution of the council and the City's Chief of Police, Herbert Gilbert ("Gilbert"), delegated with authority for setting policies, including training of the Madisonville Police Officers, had a duty, but failed to implement and/or enforce policies, practices and procedures for the Madisonville Police Department ("MPD") that respected Byrd's constitutional rights to protection under the law.  The duty to manage and train Madisonville Police Officers was delegated to Chief Gilbert by the Madisonville City Council and Viator.  The Madisonville City Council, Viator and Chief Gilbert's failure to implement the necessary policies and the implementation of unconstitutional policies deprived Byrd of due process under the Fourth Amendment and caused her unwarranted and excruciating physical and mental anguish and injuries.

3.      Plaintiff further alleges that the Madisonville Consolidated Independent School District and its policymakers, specifically MCISD Superintendent of Schools, Keith Smith ("Smith") and the MCISD School Board Members (collectively referred herein as the "MCISD Policymakers") failed to properly supervise, screen, discipline, transfer, counsel or otherwise control its officers and/or employees and its failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies, caused Byrd to experience an unwarranted and excruciating physical and mental anguish. Further, the MCISD expelled Byrd without due process.  For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for damages.

## II.      PARTIES

4.      Plaintiff, Malea Byrd is a citizen of the United States and a resident of Madison County, Texas.

5.      Defendant, the CITY OF MADISONVILLE is a municipality located in Madisonville, Texas. The CITY OF MADISONVILLE operates the MPD.  The CITY OF MADISONVILLE funds and operates the MPD, which, along with the Madisonville City Council, City Manager Viator and Chief Gilbert are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  The CITY OF MADISONVILLE Police Department is also responsible for preventive, investigative, and enforcement services for all citizens of the CITY OF MADISONVILLE. The CITY OF MADISONVILLE may be served with citation herein by and through its agent for service of process, Rosa Barrera, City Secretary, at 210 W. Cottonwood, Madisonville, TX 77864.

6.      Defendant, the Madisonville Consolidated Independent School District is a local governmental unit or municipality located in Madison County, Texas. Defendant may be served with process through its superintendent, Keith Smith, at 718 Bacon St, Madisonville, TX 77864 or wherever he may be found.

7.      Defendant Johnny Cornelius, upon information and belief, is a resident of Madison County, Texas, and at all times material herein was an officer for the MPD.  Defendant Cornelius may be served at the Madisonville Police Department, at 210 W. Cottonwood, Madisonville, TX 77864 or wherever he may be found.

8.      Defendant George Sweetin, upon information and belief, is a resident of Madison County, Texas, and at all times material herein was an officer for the MCISD.  Defendant Sweetin may be served with citation at the MCISD, at 718 Bacon St, Madisonville, TX 77864  or wherever he may be found.

### III.      JURISDICTION AND VENUE

9.      Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff by constitutional and statutory provisions.

10.     Venue is proper in this court because the causes of action occurred within the Southern District of Texas, Houston Division.

### IV.     FACTS

11.     On or about November 14, 2017, Byrd, a minor at the time, was in attendance at a basketball game being played at Madisonville High School, the school Byrd attended.  Byrd was with a group of people when they all decided they would go sit on the visitors' side to be with Byrd's family members and friends. There's nothing unusual or uncommon about sitting with friends and family members at a basketball game.  Generally, you sit wherever you want to.

12.     There was no rule or policy implemented by the MCISD that prohibited students from sitting on the visitor's side of the gym and students, including Byrd, have always sat wherever they wanted to before the incident in question. While Byrd was sitting on the visitor's side, not causing a disturbance or violating any rules, she noticed the school principals pointing at them. Shortly thereafter, the school police officers approached Byrd and her friends and told them they

had to move. Byrd and her friends, confused as to why they were being ordered to move, fully complied although they clearly were being singled out.

13.     Later during the game, Byrd's cousin, Alonzo Childress ("Childress") wanted to purchase pizza from the concession stand and asked that Trey Morning ("Morning") and Byrd accompany him.   As Byrd, Morning and Childress walked to the concession stand, Kathleen Golden ("Golden"), an assistant principal at Madisonville High School and one of the principals who had been following the three of them, pulled Byrd to the side and addressed Byrd about her nose ring.   After having a short conversation with Mrs. Golden, Byrd re-joined Childress and Morning. Because the line at the concession stand on the home side was extremely long, Byrd, Morning and Childress decided to go to the visitor's concession stand so they didn't miss much of the game waiting in line.

14.     As Byrd, Morning and Alonzo were walking to the concession stand, Mrs. Golden once again stopped the three of them and for some reason told them they couldn't go on the visitor's side.  Byrd, Morning and Alonzo each informed Mrs. Golden that they weren't going to sit over there but for some reason Golden asked only Byrd to step outside in the cold weather to talk. Once Byrd and Golden were outside, all Golden did was stare at Byrd and did not say a word, causing Byrd to fear for her safety.  Byrd, not wanting anything to happen without any witnesses present, turned around and proceeded to enter the gymnasium, when Golden put her arm up to stop Byrd from re-entering the gym. At that point Byrd decided to call her mother because she was afraid of Golden. Clearly Golden was attempting to cause problems for Byrd.  While Byrd was talking to her mother, Byrd informed her mother that Golden was standing next to her so Byrd's mother asked to speak with Mrs. Golden.  Mrs. Golden refused to take the phone so Byrd placed the phone on speaker.

15.     As Byrd's mother was addressing the situation, Golden asked Byrd to leave. Golden told Byrd she would have to wait outside in the cold for her mother. Byrd pleaded with Golden to wait inside since she did not have on a coat.  Golden, despite knowing the conditions outside, did not care about the well-being of one of her students and continued to order Byrd to go outside in the cold weather, which was also an unsafe thing to do.

16.     Without warning and any lawful reasons to do so, Golden grabbed Byrd's shirt and pulled her.  As this was transpiring, Golden called the school officers over to assist her with throwing a minor girl outside in the cold weather.  Without conducting any investigation as to what was transpiring, Cornelius and Sweetin immediately handled Byrd in a very rough and aggressive manner. During the course of the encounter, Cornelius spilled his hot coffee on Byrd, both Cornelius and Sweetin ripped Byrd's shirt, and Cornelius placed his knees in Byrd's back while twisting her arm so hard, it caused Byrd unbearable pain. Despite being injured, in obvious pain and in the custody of Cornelius, Sweetin kicked Byrd in her arm and grabbed Byrd's phone out of her hand and threw it to the ground, causing it to break. While Cornelius was on Byrd's back, the force he placed on Byrd's back caused her shortness of breath. Byrd, at one point, thought she was going to die.  Byrd, visibly bleeding, was placed in handcuffs and detained outside until additional officers from the Madisonville Police Department arrived.   Byrd was later released to her mother and was taken to the Madisonville St. Joseph Hospital to be treated for her injuries.

17.     In connection with the incident, Byrd was falsely charged with an assault on a public servant and expelled from school for an indefinite period of time without a due process hearing. Byrd and her mother were instructed not to return to the campus and were not given a notice of a hearing to appeal the discipline handed down to Byrd.  As a result, Byrd, an honor roll student, was kicked out of the National Honors Society and the Beta Club.  The Beta Club is an

organization for 4th through 12th grade students in the United States.  Its purpose is "to promote the ideals of academic achievement, character, leadership and service among elementary and secondary school students.  Byrd was kept out of school for over three months and was forced to retain an attorney in order to return to school.  When Byrd was allowed to return to school she was forced to attend alternative school, further humiliating and embarrassing her.  The false criminal charges against Byrd were eventually dismissed on August 7, 2018.  However, Byrd suffered extreme and severe mental and emotional distress, agony and anxiety as a result of the actions of the Defendants and continues to suffer today.

18.     Defendants, the CITY OF MADISONVILLE, MPD and MCISD have a longstanding record of not providing their officers with adequate training and not preventing excessive force by Madisonville Police officers.  The officers have a history of treating individuals, specifically minorities, in a manner intended to intimidate and cause  harm.

19.     There is no evidence that Defendants Cornelius, Sweetin or anyone else were placed in fear of imminent harm or danger.  There were no struggles or active resistance by Byrd that would indicate that the use of excessive force was justified or even needed.

20.     Defendants Cornelius and Sweetin unlawful and unwarranted acts, lack of training and the official customs or policies of the MPD and the MCISD caused Plaintiff's injuries.

21.     Plaintiff would show that Defendants Cornelius and Sweetin's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the MPD and MCISD in regards to the use of excessive force for which the CITY OF MADISONVILLE, the City Council, City Manager Viator, Chief Gilbert, the MCISD and Smith knew or should have known but never provided the requisite and proper training.

22.     Moreover, no reasonably competent official would have concluded that the actions of Defendants Cornelius and Sweetin described herein would not violate Plaintiff's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendants Cornelius and Sweetin's conduct was justified.   Further, in depriving in wrongfully expelling Byrd and depriving her of a due process hearing, Byrd was kept out of school where she was forced to miss out on her educational studies and left to deal with the humiliation of it all.

23.     As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.  For these losses, Byrd seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

## V.      CAUSES OF ACTION

**A.      Cause of Action against Cornelius and Sweetin under 42 U.S.C. §1983 for violation of the Plaintiff's Fourth Amended Right to be free from excessive force.**

24.     Plaintiff would show that Defendants Cornelius and Sweetin's actions on the occasion in question were excessive and wrongful in depriving her of her constitutional rights, as alleged more fully below.

25.     Plaintiff would show that at all times material hereto, Defendants Cornelius and Sweetin had a duty to avoid infliction of unjustified bodily injury to her, to protect her bodily integrity and to not trample on her constitutional rights, including the right to be free from the use of excessive force.

26.     Plaintiff would show that Defendants Cornelius and Sweetin failed to act as a reasonable officer would have acted in the same or similar circumstances.  That is, Defendants Cornelius

and Sweetin, without justification and the need to do so, kicked, punched and attacked Byrd. Byrd was not attempting to harm or attack anyone when Defendants Cornelius and Sweetin decided to attack her.  Defendants Cornelius and Sweetin's use of excessive force resulted in the injuries to Byrd.

27.     The excessive force used by Defendants Cornelius and Sweetin was not reasonable, justified nor was it necessary under the circumstances.  Defendants Cornelius and Sweetin's actions were not objectively reasonable because they followed a procedure designed to inflict excessive force and bodily injuries in restraining individuals in a non-life-threatening situation.

28.     Further, Defendants Cornelius and Sweetin's conduct violated a clearly established constitutional right—the right to be free from excessive force—that was established well before Defendants Cornelius and Sweetin injured Byrd.

29.     The force used by Defendants Cornelius and Sweetin was unnecessary and unreasonable under the circumstances, as Byrd, who was not attempting to harm anyone did not require the use of such excessive force.

30.     As a direct and proximate cause of the incident as set forth herein, Plaintiff incurred extreme pain and injuries for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**B.      Causes of Action against the City of Madisonville and MCISD under 42 U.S.C. § 1983 for violation of the Plaintiff's Fourth Amendment Rights.**

31.     The City of Madisonville and the MCISD are liable for all damages suffered by the Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the Madisonville Police Department and the MCISD of which the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith all had

actual or constructive knowledge that such policies and customs were a moving force behind the constitutional violations alleged herein.

> **1.** **The City of Madisonville and the MCISD failed to train their officers on use of force and in dealing with individuals during an arrest.**

32.     Plaintiff incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     Defendant Cornelius, assisted by Sweetin, acting under color of law and pursuant to customs, practices and policies of The CITY OF MADISONVILLE, the MPD and MCISD in regards to the use of excessive force as authorized and/or ratified by the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith, deprived Byrd of rights and privileges secured to her by the Fourth Amendment to the United States Constitution and by other laws of the United States, by failing to provide proper training in the use of excessive force in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.  The Madisonville City Council, City Manager Viator, Chief Gilbert and Smith deliberate indifference in failing to train based on the obviousness of the need for training has resulted in the use of excessive force involving unarmed individuals.

34.     With respect to the claims made the basis of this lawsuit, The CITY OF MADISONVILLE, the MPD and MCISD failed to adequately train its employees regarding the proper use of excessive force and de-escalation techniques. The failure to train its employees in a relevant respect reflects a deliberate indifference to the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith to the rights of the city's inhabitants and is actionable under 42 U.S.C. § 1983.

35.     Defendant The CITY OF MADISONVILLE, the MPD and the MCISD under the direction of the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith developed and maintained a policy of deficient training of its police force in the use of force,

including the use of excessive force in the apprehension of individuals. The CITY OF MADISONVILLE's training is designed and implemented by Chief Gilbert to act in this regard. The actual practice or custom of the MPD regarding the arrest of individuals is to use whatever force even if the force is excessive. The MPD has a custom and practice of using excessive force during the arrest of individuals. It is a well-known fact in the CITY OF MADISONVILLE.

36.     The CITY OF MADISONVILLE, the MPD and the MCISD's failure to provide adequate training to its officers regarding the proper use of excessive force reflects deliberate indifference by the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith and reckless and conscious disregard for the obvious risk that officers would use excessive force on citizens and made the violations of Plaintiff's constitutional rights, a reasonable probability.

37.     Plaintiff would show that Defendant Cornelius's, assisted by Sweetin, actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith knew or should have known but never provided the requisite and proper training.

38.     On information and belief, the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff failed to implement the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Byrd during her struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented Plaintiff from receiving the protection, assistance and care she deserved.

39.     The Madisonville City Council, City Manager Viator, Chief Gilbert and Smith Madisonville City Council, City Manager Viator, Chief Gilbert and Smith as applicable, failed

and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of excessive force and de-escalation techniques.  In so doing, Defendant the CITY OF MADISONVILLE and the MCISD knew that they were acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Plaintiff's injuries -- in all reasonable probability would occur.

40.     Furthermore, unlike what Defendants Cornelius and Sweetin did, no reasonably prudent police officer, under similar circumstances, would have used excessive force to arrest Byrd. Moreover, no reasonably competent official would have concluded that the actions of the CITY OF MADISONVILLE, the MCISD and Defendants Cornelius and Sweetin described herein would not violate Plaintiff's rights.  In other words, no reasonably officer, under similar circumstances, could have believed that their conduct was justified.

41.     The CITY OF MADISONVILLE, the MPD and the MCISD's failure to properly train its police officers regarding the proper use of excessive force and de-escalation techniques under the authority of the Madisonville City Council, City Manager Viator, Chief Gilbert and Smith was the proximate cause of the violations of Plaintiff's constitutional rights.

42.     As a direct and proximate cause of the incident as set forth herein, Plaintiff incurred extreme pain and injuries for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

      **2.     The City of Madisonville and the MCISD failed to adequately supervise or discipline its officers for violent, aggressive, and excessive force and, in failing to do so, ratified and encouraged the conduct of its officers.**

43.     Plaintiff incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

44.    On Plaintiff's governmental liability claim against the City of Madisonville and the MCISD for failing to supervise or discipline its officers for prior violations and the resulting lack of supervision:

      a.     the City of Madisonville and the MCISD failed to adequately supervise and/or discipline their employees in handling usual and recurring situations with which they deal;

      b.     the City of Madisonville and the MCISD failed to discipline their officers for using excessive force;

      c.     the City of Madisonville and the MCISD failed to discipline their officers for the failure to use de-escalation techniques;

      d.     the City of Madisonville and the MCISD were deliberately indifferent to the need to supervise and/or discipline their officers and/or employees adequately; and

      e.     the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Byrd's constitutional rights.

45.    The Madisonville City Council, City Manager Viator, Chief Gilbert and Smith ratified the unconstitutional conduct of Cornelius and Sweetin although they knew it to be unconstitutional.

46.    As a direct and proximate result of the City of Madisonville and the MCISD's failure to adequately supervise or discipline its officers, Plaintiff has suffered damages as set forth more specifically in the section of this Complaint entitled "Damages."

**D.**    **Cause of Action against Defendant MCISH in violation of Plaintiff's Fourteenth Amendment rights.**

47.    Plaintiff incorporates by reference paragraphs 1 through 46 as if fully set forth herein. Plaintiff would show that Defendant MCISD's actions on the occasion in question were wrongful in depriving Byrd of her constitutional rights, as alleged more fully below.

      1.      **Failure to provide Notice and a Fair Hearing.**

48.    Plaintiff would show that at all times material hereto, Defendant MCISD was aware that Byrd was not provided with notice and the opportunity to have a fair hearing.  In fact, Byrd and her mother were given direct orders not to step on the property of the MCISD after Byrd was wrongfully expelled from school and if they did, they would be arrested.  This essentially prevented Byrd from having a hearing at all, even though she was not provided with any notice to have one.  All long term suspensions and expulsions must be evaluated in a formal hearing in which Byrd has the right to:

- Know what specific rules were violated;
- Have the decision regarding the suspension/expulsion decided by an impartial three person panel;
- Bring evidence and witnesses on the student's behalf;
- Bring legal counsel;
- Have the hearing be closed to the protect the privacy of the student

      Byrd's' denial of her due process caused her to suffer an injury.

49.    As a direct and proximate cause of the incident as set forth herein, Plaintiff incurred extreme pain and injuries for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## VI.    <u>DAMAGES ALL DEFENDANTS</u>

50.    **Actual damages.**  Plaintiff incorporates by reference paragraphs 1 through 49 as if fully set forth herein.  Defendants' acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff, both on the past and that Plaintiff will, in reasonable probability, continue to suffer in the future:

      a.    Pain and suffering;

      b.      Mental anguish;

      c.      Loss of lost wage earning capacity;

      d.      Medical expenses; and

      e.      Pre- and post-judgment interest at the highest rate permitted by State and Federal law.

51.     **Punitive/Exemplary Damages against Defendants Cornelius and Sweetin.** Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of Defendants Cornelius and Sweetin was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of the Plaintiff.  As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.

52.     Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.   COSTS AND ATTORNEY FEES

53.     Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth herein. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).  As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution ofthis litigation.

## VIII.   CONDITIONS PRECEDENT

54.     Plaintiff reserves her rights to plead and prove the damages to which she is entitled to at the time of trial.  All conditions to Plaintiff's recovery have been performed or have occurred.

## IX.     TRIAL BY JURY

55.     Plaintiff has paid a jury fee and demands trial by jury.

## X.     PRAYER

56.     For these reasons, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show he is justly entitled.

Respectfully submitted,

By: /s/ Daryl K. Washington
    Daryl K. Washington
    State Bar No. 24013714
    Southern District Bar No. 612861

    dwashington@dwashlawfirm.com
    WASHINGTON LAW FIRM, PC
    325 N. St. Paul St., Suite 3950
    Dallas, Texas 75201
    214-880-4883
    214-751-6685 - fax

    **LEAD ATTORNEY FOR PLAINTIFF**