United States District Court
Southern District of Texas

**ENTERED**

May 11, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MALEA BYRD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-4473 |
| | § | |
| THE CITY OF MADISONVILLE, TEXAS, | § | |
| MADISONVILLE CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| JOHNNY CORNELIUS and GEORGE | § | |
| SWEETIN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred to the Magistrate Judge for all pretrial proceedings is Defendant Madisonville Consolidated Independent School District's Motion to Dismiss Plaintiff's Second Amended Original Complaint for Failure to State a Claim (Document No. 26). Having considered that motion, the response and additional briefing, the allegations against Defendant Madisonville Consolidated Independent School District ("MCISD") in Plaintiff's Second Amended Complaint, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Motion to Dismiss (Document No. 26) be GRANTED[1] and Plaintiff's Fourth Amendment based claims against MCISD under 42 U.S.C. § 1983 be DISMISSED for failure to state a claim.

---

[1] Defendant MCISD's Motion to Dismiss Plaintiff's First Amended Complaint (Document No. 21), which was superseded by Defendant's subsequently filed Motion to Dismiss Plaintiff's Second Amended Complaint, is MOOT.

## I.    Background

This is a civil rights case brought by Plaintiff Malea Byrd ("Byrd") for injuries she sustained as a result of the excessive force used on her while she was a student at MCISD.  Byrd alleges in her Second Amended Complaint that on November 14, 2017, while she was a student at MCISD, and while she was attending a school basketball game, she was first asked to move from the visitors' side of the court, and then asked to leave the game.  An assistant principal at the school, Kathleen Golden, called two MCISD police officers, Defendants Johnny Cornelius and George Sweetin, for assistance and they, according to Bryd, used excessive force against her.  Byrd alleges in this regard:

14.     . . . Without conducting any investigation as to what was transpiring, Cornelius and Sweetin immediately handled Byrd in a very rough and aggressive manner.  During the course of the encounter, Cornelius spilled his hot coffee on Byrd, both Cornelius and Sweetin ripped Bryd's shirt, and Cornelius placed his knees in Byrd's back while twisting her arm so hard, it caused Byrd unbearable pain. Despite being injured, in obvious pain and in the custody of Cornelius, Sweetin kicked Byrd in her arm and grabbed Byrd's phone out of her hand and threw it to the ground, causing it to break.  While Cornelius was on Byrd's back, the force he placed on Byrd's back caused her shortness of breath.  Byrd, at one point, thought she was going to die.  Byrd, visibly bleeding, was placed in handcuffs and detained outside until officers from the Madisonville Police Department arrived.  Byrd was later released to her mother and was taken to the Madisonville St. Joseph Hospital to be treated for her injuries.

15.     In connection with the incident, Byrd was falsely charged with an assault on a public servant and expelled from school for an indefinite period of time without a due process hearing.  Byrd and her mother were specifically instructed not to return to the campus, which is where the MCISD is located, and were prevented from being able to have a hearing to appeal the discipline handed down to Byrd. Byrd and her mother were advised if they returned to the campus, they would be arrested.  As a result of the incident, Byrd, an honor roll student, was kicked out of the National Honors Society and the Beta Club. . . . Byrd was kept out of school for over three months and was forced to retain an attorney in order to return to school.  When Byrd was finally allowed to return to school she was forced to attend alternative school, further humiliating and embarrassing her although Smith [the Superintendent] and the MCISD were well aware that there was ample evidence of Byrd's innocence.  The false charges against Byrd were eventually dismissed on August 7, 2018.  Despite

having the charges dismissed, Byrd suffered extreme and severe mental and emotional distress, agony and anxiety as a result of the actions of the Defendants and continues to suffer today.  Byrd was stripped of a[] high school career that was full of promise[ ].  Byrd had a spotless record with the MCISD and had never been arrested before.

Plaintiff's Second Amended Complaint (Document No. 16 at 5-6).

Byrd has asserted Fourth Amendment excessive force claims against Defendants Cornelius and Sweetin under 42 U.S.C. § 1983.  She also asserts a Fourth Amendment claim against Defendant MCISD under § 1983 based on its alleged failure to "train its officers on use of force and in dealing with individuals during an arrest," and its failure to "adequately supervise or discipline its officers for violent, aggressive, and excessive force."  In addition, as against Defendant MCISD, Byrd has asserted a Fourteenth Amendment claim § 1983 for not providing her with a fair hearing related to her expulsion.

Defendant MCISD seeks dismissal of the claims against it, arguing that Bryd has not alleged a custom, policy or practice of MCISD that was the "moving force" behind the alleged excessive force used by Defendants Cornelius and Sweetin.  In addition, MCISD argues that the failure to train and failure to discipline claims are unsupported by any facts, and that under Fifth Circuit precedent she has not, with her conclusory allegations, stated a plausible claim.  Byrd responds to the Motion to Dismiss by pointing to the allegations in her Second Amended Complaint about MCISD's failure to train, or adequately train, its police officers on the appropriate use of force against minors, such as she.  Byrd also points out in her Response that Defendant MCISD has not challenged her Fourteenth Amendment due process claim.

## II.        Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of " 'naked assertions devoid of further factual enhancement.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556–557; *Iqbal*, 129 S.Ct. at 1950–1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). But, as it is only facts that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded facts, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 1950.

4

### III.  Discussion

At the outset it must be noted, as Byrd has, that MCISD has made no real challenge to her Fourteenth Amendment based § 1983 claim that MCISD did not afford her a due process hearing and/or a fair due process hearing.  As such, that claim is not at issue in MCISD's Motion to Dismiss and will not be addressed or considered herein. What is at issue is Byrd's Fourth Amendment based § 1983 claim that MCISD, through a custom, policy or practice, or a failure to train or discipline Defendants Cornelius and Sweetin, was the moving force behind the excessive force used by Defendants Cornelius and Sweetin on her on November 14, 2017.

42 U.S.C. § 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989), *cert. denied*, 493 U.S.1019 (1990). To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting "under color of state law."  *See Bass v. Parkwwod Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999); *Gomez v. Toledo*, 446 U.S. 635, 340 (1980) ("By the plain terms of § 1983, two-and only two-allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").

When a municipality, including a school district, has been sued under § 1983, there is only

liability if it can be shown that "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). There is no respondeat superior liability. *Id.* at 692. That means that a municipality, such as MCISD in this case, can only be held liable for the alleged excessive force used by Defendants Cornelius and Sweetin (MCISD employees) if MCISD can be said to have *caused* the use of the alleged excessive force. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) ("the school district 'cannot be held liable under § 1983 on a respondeat superior theory.' [ ] Rather, the school district itself must have caused the violation.") (quoting *Monell*, 436 U.S. at 690)); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.) ("the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability"), *cert. denied*, 534 U.S. 820 (2001). When the theory of municipal liability is based on an alleged failure to train, it must be shown that the failure to provide proper training "caused" the injury complained of. *Brown v. Bryan Cty., OK*, 219 F.3d 450, 457 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001). Somewhat similarly, when the theory of municipal liability is based on an alleged failure to supervise or discipline, it must be shown that "the inadequate-supervision policies directly caused the plaintiff's injuries." *Malone v. City of Fort Worth, Texas*, 297 F. Supp. 3d 645, 656 (N.D. Tex. 2018).

To state a § 1983 claim against a municipality such as MCISD, the complaint "must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an official policy attributable to the school district's policymakers (3) was the moving force behind it." *Littell*, 894 F.3d at 622-23. An "official policy" needed to establish

municipal liability under § 1983 is defined as:

> a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S. Ct. 3476 (1985). "The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes 'deliberate indifference' to the rights of the plaintiff, and such indifference is a 'closely related' cause of the plaintiff's injuries." *May v. City of Arlington, Texas*, 398 F. Supp. 3d 68, 79 (N.D. Tex. 2019) (citing and quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989)). When challenged in a 12(b)(6) context, the plaintiff "must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). In addition, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

When a municipality's alleged failure to train is at issue, as is the case here, "culpability for a deprivation of rights is at its most tenuous." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "As with a widespread practice claim, allegations of multiple incidents of fairly similar unconstitutional

7

conduct are typically necessary to survive dismissal." *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1009 (W.D. Tex. 2019).  To state a claim against a municipality based on an alleged failure to train, the complaint must contain facts "plausibly establishing '(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.'" *Ratliff*, 948 F.3d at 285 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010), *cert. denied*, 564 U.S. 1038 (2011)).  Similarly, when a municipality's alleged failure to supervise and/or discipline is at issue, the complaint must allege facts plausibly establishing that (1) the municipality's supervisory or disciplinary procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its supervision and disciplinary procedures; and (3) the inadequate supervision or discipline caused the complained of violations.  *See Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("In a § 1983 claim for failure to supervise or train, the plaintiff must show that: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'") (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir.1998), *cert. denied*, 558 U.S. 1148 (2010).

Here, the allegations in the Complaint, taken as true, do not state a Fourth Amendment based § 1983 claim against MCISD under any of the theories alleged.  In the Second Amended Complaint, Byrd alleges:

> Defendant, the MCISD has a longstanding record of not providing their officers with adequate training and not preventing excessive force by MCISD Police officers.  The officers have a history of treating individuals, specifically minorities, in a manner intended to intimidate and cause harm."

* * *

". . . Defendants Cornelius and Sweetin's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the MCISD in regards to the use of excessive force for which the MCISD, Smith [the Superintendent] and the MCISD Board members knew or should have known but never provided the requisite and proper training"

* * *

". . . MCISD failed to adequately train its employees regarding the proper use of excessive force and de-escalation techniques."

* * *

". . . . The actual practice or custom of the MCISD regarding the arrest of individuals is to use whatever force even if the force is excessive."

* * *

"MCISD failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal . . . failed to discipline its officers for using excessive force . . . failed to discipline its officers for the failure to use de-escalation techniques"

Plaintiff's Second Amended Complaint (Document No. 16) at ¶ 16, 19, 32, 33 and 42.[2]  These allegations do not state a policy, custom or practice of MCISD that was the moving force behind the alleged Fourth Amendment violation.  While Byrd alleges that MCISD has a practice or custom of allowing their officers to use excessive force, these allegations relative to the existence of a custom, policy or practice are conclusory and devoid of any factual content to plausibly "plead a practice 'so persistent and widespread as to practically have the force of law.'" *Ratliff*, 948 F.3d at 285 (quoting *Peña*, 879 F.3d at 622)).  Byrd has not identified any other instances of alleged excessive force used by MCISD officers against students, much less any instances that are in any way similar to the facts

---

[2] While there are more allegations, they are essentially the same as those set out herein.

and circumstances which she faced and about which she complains in this case.  Her allegations of

a policy, practice or custom are essentially conclusory, and cannot, under controlling Fifth Circuit

precedent, state a widespread practice or customary policy claim against MCISD.  *See id.* at 285

(upholding dismissal of municipal liability claims where plaintiff's complaint contained facts about

the alleged violation of his constitutional rights, but only conclusory allegations about the existence

of a widespread custom or practice); *Peña*, 879 F.3d at 621-23 (upholding dismissal of municipal

liability claims where the allegations in the complaint about the existence of a policy, custom or

practice were conclusory).

As for MCISD's alleged failure to train and alleged failure to supervise and/or discipline,

again, the allegations are woefully inadequate.  All Byrd alleges is that MCISD has not trained or

supervised/disciplined their officers on the use of excessive force and de-escalation techniques.

There are no allegations in the Second Amended Complaint about what training is provided by

MCISD, how that training is inadequate, or what additional training should be required.  *Roberts v.*

*City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (to withstand dismissal, "a plaintiff must allege

with specificity how a particular training program is defective"); *Quinn v. Guerrero*, 863 F.3d 353,

365 (5th Cir. 2017) ( "Defects in a particular training program must be specifically alleged"), *cert.*

*denied*, ___ U.S. ___, 138 S.Ct. 682 (2018). In addition, there are no factual allegations about how

MCISD's supervision or discipline of its officers was inadequate or how MCISD was deliberately

indifferent in adopting or developing its supervision and discipline procedures.  Byrd alleges that

MCISD has "a longstanding record" of not providing adequate training and not preventing excessive

force, and a "history" of mistreating minorities, but there are no *facts* to support those allegations.

In particular, there are no *facts* about prior, additional or other excessive force cases or allegations

against MCISD, no *facts* alleged from which it could be concluded that MCISD knew of any deficiencies in the training it provided to officers, and no *facts* alleged from which it could be concluded that MCISD knew officers were using excessive force in the manner alleged by Bryd, and consciously failed to supervise or discipline such officers.[3] Because Byrd's allegations in her Second Amended Complaint do not state a municipal liability Fourth Amendment excessive force claim against MCISD under any of the theories alleged, *see e.g. Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383 (W.D. Tex. Mar. 31, 2020) (dismissing plaintiff's § 1983 municipal liability claims for failure to state a claim); *Bradyn v. Waxahachie Indep. Sch. Dist.*, 407 F.Supp.3d 612, 625 (N.D. Tex. Sept. 10, 2019) (dismissing municipal liability claims where there were no allegations of an official policy, custom, or widespread practice of using allegedly unconstitutional restraints and handcuffs on students), MCISD's Motion to Dismiss should be granted.

## IV.    Conclusion and Recommendation

Based on the foregoing and the conclusion that Plaintiff Malea Byrd has not, with the allegations in her Second Amended Complaint (Document No. 16), stated a plausible Fourth Amendment based claim against Defendant Madisonville Consolidated Independent School District under 42 U.S.C. § 1983, the Magistrate Judge

RECOMMENDS that Defendant Madisonville Consolidated Independent School District's

---

[3] Additionally, because there are no allegations that MCISD completely failed to provide *any* training or supervision of its officers, this case does not fall within the type of "narrow and extreme circumstances" that would state a plausible claim for municipal liability under § 1983 based on a single incident of unconstitutional conduct. *See Peña*, 879 F.3d at 624 ("the exception is generally reserved for those cases in which the government actor was provided no training whatsoever"); *Sinegal*, 414 F. Supp. 3d 995, 1009 (discussing the narrow exception and need for allegations that there was no training whatsoever).

Motion to Dismiss Plaintiff's Second Amended Original Complaint for Failure to State a Claim (Document No. 26) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b).  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 11th day of May, 2020.

Frances H. Stacy
United States Magistrate Judge