United States District Court
Southern District of Texas
**ENTERED**
September 10, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MALEA BYRD, | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | § CIVIL ACTION NO. H-19-4473 |
| | § |
| THE CITY OF MADISONVILLE, TEXAS, | § |
| MADISONVILLE CONSOLIDATED | § |
| INDEPENDENT SCHOOL DISTRICT, | § |
| JOHNNY CORNELIUS and GEORGE | § |
| SWEETIN, | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred to the Magistrate Judge for all pretrial proceedings is Defendants' Motion for Summary Judgment (Document No. 47), in which Defendants Johnny Cornelius and George Sweetin seek summary judgment on the § 1983 excessive force claim that remains pending against them, and Madisonville Consolidated Independent School District seeks summary judgment on the § 1983 due process claim that remains pending against it. Having considered the motion, the response, Defendants' reply, the summary judgment evidence and objections thereto, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion for Summary Judgment (Document No. 47) be DENIED.

## I.    Background

This is a civil rights case brought by Plaintiff Malea Byrd ("Byrd") for injuries she alleges she sustained as a result of the excessive force used on her while she was a student at MCISD. Byrd alleges in her Second Amended Complaint that on November 14, 2017, while she was a student at

MCISD, and while she was attending a school basketball game, she was first asked to move from the visitors' side of the court, and then asked to leave the game by an assistant principal at the school, Kathleen Golden.  Two MCISD police officers, Defendants Johnny Cornelius and George Sweetin, then became involved, and, according to Byrd, used excessive force against her by forcibly restraining her on the ground and handcuffing her.  Byrd alleges in this regard:

> 14.   . . . Without conducting any investigation as to what was transpiring, Cornelius and Sweetin immediately handled Byrd in a very rough and aggressive manner.  During the course of the encounter, Cornelius spilled his hot coffee on Byrd, both Cornelius and Sweetin ripped Byrd's shirt, and Cornelius placed his knees in Byrd's back while twisting her arm so hard, it caused Byrd unbearable pain.  Despite being injured, in obvious pain and in the custody of Cornelius, Sweetin kicked Byrd in her arm and grabbed Byrd's phone out of her hand and threw it to the ground, causing it to break.  While Cornelius was on Byrd's back, the force he placed on Byrd's back caused her shortness of breath.  Byrd, at one point, thought she was going to die.  Byrd, visibly bleeding, was placed in handcuffs and detained outside until officers from the Madisonville Police Department arrived.  Byrd was later released to her mother and was taken to the Madisonville St. Joseph Hospital to be treated for her injuries.

Byrd also alleges that she was, as a result of the incident, expelled from school without being afforded an opportunity to appear and participate in a due process hearing.  According to Byrd:

> 15.   In connection with the incident, Byrd was falsely charged with an assault on a public servant and expelled from school for an indefinite period of time without a due process hearing.  Byrd and her mother were specifically instructed not to return to the campus, which is where the MCISD is located, and were prevented from being able to have a hearing to appeal the discipline handed down to Byrd.  Byrd and her mother were advised if they returned to the campus, they would be arrested.  As a result of the incident, Byrd, an honor roll student, was kicked out of the National Honors Society and the Beta Club. . . . Byrd was kept out of school for over three months and was forced to retain an attorney in order to return to school.  When Byrd was finally allowed to return to school she was forced to attend alternative school, further humiliating and embarrassing her although Smith [the Superintendent] and the MCISD were well aware that there was ample evidence of Byrd's innocence.  The false charges against Byrd were eventually dismissed on August 7, 2018.  Despite having the charges dismissed, Byrd suffered extreme and severe mental and emotional distress, agony and anxiety as a result of the actions of the Defendants and continues to suffer today.  Byrd was stripped of a[] high school career that was full

2

of promise[ ].  Byrd had a spotless record with the MCISD and had never been
arrested before.

Plaintiff's Second Amended Complaint (Document No. 16 at 5-6).

Following the ruling on Defendant MCISD's Motion to Dismiss, there remain only two claims in this case: (1) for excessive force under § 1983 against Defendants Cornelius and Sweetin; and (2) for due process violations under § 1983 against Defendant MCISD.  Defendants now maintain that summary judgment is now warranted on those claims because: (1) Defendants Cornelius and Sweetin are entitled to qualified immunity based on the summary judgment evidence which shows that their actions were objectively reasonable; and (2) Defendant MCISD provided Byrd with notice of an expulsion hearing, Byrd and her mother failed to appear for that hearing, and Byrd and her mother did not appeal the expulsion.

## II.    Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted.  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*,

3

144 F.3d 377, 380 (5th Cir. 1998).[1]  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *Celotex*, 106 S. Ct. at 2548.  Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.*  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  *Anderson*, 106 S. Ct. at 2513.

## III.    Summary Judgment Evidence

Each side has objected to the summary judgment evidence offered by the other.  Defendants object to most of the statements in the Declarations of Byrd and her mother (Document No. 52), and Byrd objects to the documentary evidence submitted by Defendants as inadmissible hearsay

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

(Document No. 57), and also objects (Document No. 57) to the video evidence offered by Defendants in their Reply (Document No. 52), arguing that it should have been submitted by Defendants with their Motion for Summary Judgment, and not in a Reply, to which Byrd had no meaningful opportunity to respond.

Byrd's objections to the video evidence and Defendants' documentary evidence are OVERRULED.  Defendant's documentary evidence is admissible under Fed. R. Evid. 803(6) and Local Rule 7.8.  The video evidence, which admittedly does not capture the entirety of the interaction(s) between Byrd and Defendants Cornelius and Sweetin, was submitted and offered to rebut the statements in Byrd's Declaration. As rebuttal evidence, the video is not subject to exclusion as only having been submitted with Defendants' Reply.  *See C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. PE:18-CV-00039-DC-DF, 2020 WL 4708714, at *2 (W.D. Tex. July 13, 2020) (declining to strike declarations, which were submitted in rebuttal to evidence and arguments raised by defendant for the first time in its response); *Keller v. Cox Radio, Inc.*, No. SA-08-CA-284-OG, 2009 WL 10700097, at *5 (W.D. Tex. Apr. 30, 2009) (a rebuttal argument is proper in a reply); *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) ("those circuits that have expressly addressed this issue have held that a district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond").

Defendants' objections to the statements in the Declarations of Byrd and Byrd's mother (Codi Gooden) are SUSTAINED IN PART AND OVERRULED IN PART.  The hearsay objections to the statements of Byrd in paragraphs 5 and 6 of her Declaration are SUSTAINED.  The hearsay objection to the statement of Byrd in Paragraph 9 of her Declaration is, however, OVERRULED,

5

given that the objected-to statement is admissible under FED. R. EVID. 801(d)(2).  The remainder of the objections to Byrd's Declaration – on the basis that the Declaration is entirely self-serving, and that certain statements are speculative, and are not based on personal knowledge and lack proper foundation – are also OVERRULED.  Byrd attended the game, was seemingly aware of the usual procedures and/or rules for attending games at the school, and was present during her interactions with school personnel and Defendants.  She has/had sufficient knowledge and foundation to support the objected to statements in paragraphs 2, 3, 7, and 10 of her Declaration.  As for the lack of personal knowledge and lack of foundation objection to Codi Gooden's Declaration, it is SUSTAINED as to the statements in paragraph 1.  The hearsay objections to paragraphs 4, 5, 6 of Gooden's Declaration are also SUSTAINED, but OVERRULED as to the statements in paragraphs 7 and 8 of Gooden's Declaration, which are, like the statements in Byrd's Declaration, admissible under FED. R. EVID. 8014(d)(2).   The remainder of the objections to both Byrd's Declaration and Gooden's Declaration on the basis that certain statements are inadmissible legal opinions (objected to portions of paragraphs 7, 9, and 10 of Byrd's Declaration; and objected to portions of paragraphs 6, 7, and 10 of Gooden's Declaration), are SUSTAINED.

## IV.    Discussion – § 1983 excessive force claim against Cornelius and Sweetin

Byrd asserts a § 1983 claims against Defendants Cornelius and Sweetin in their individual capacities.  The violation underlying that § 1983 claim is the Fourth Amendment right to be free of excessive force.

Section 1983 of Title 42 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable

to the party injured in an action at law, suit in equity, or other proper proceedings for redress...."

42 U.S.C. § 1983.  "Rather than creating substantive rights, § 1983 simply provides a remedy for

the rights that it designates."  *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573

(5th Cir. 1989), *cert. denied,* 493 U.S.1019 (1990).  To state a claim under § 1983, plaintiffs must

(1) allege a violation of rights secured by the Constitution or laws of the United States, and (2)

demonstrate that the alleged deprivation was committed by a person acting under color of state law.

*See Bass v. Parkwwod Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999).  "Because the Fourteenth

Amendment protects liberty and property interests only against invasion by the state, a Section 1983

plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show

that state action caused his injury."  *Id.*

An individual's liability under § 1983 is tempered by qualified immunity, an affirmative

defense available to an individual public official.  *Harlow v. Fitzgerald*, 457 US. 800, 818 (1982).

In general, qualified immunity is available for public employees and officers whose duties require

the exercise of discretion.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), and whose acts fall

within the scope of their discretionary authority.  *Brooks v. George County, Miss.,* 84 F.3d 157, 164

(5th Cir.), *cert denied*, 519 U.S. 948 (1996).  "[G]overnment officials performing discretionary

functions, generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Harlow*, 457 U.S. at 818; *Behrens v. Pelletier,* 516 U.S. 299, 305-06 (1996).  Qualified

immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Babb*

*v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Malley v. Briggs*, 457 U.S. 335, 341 (1986)).

A dual analysis is applied to qualified immunity defenses.  "The first question is whether the

7

officer violated a constitutional right. The second question is whether the 'right at issue was "clearly established"' at the time of [the] alleged misconduct.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  The answer to the first question is determined by viewing the allegations and evidence in the light of the currently applicable constitutional standards. *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).  The answer to the second question is determined by reference to the law as it existed at the time of the incident made the basis of the suit.  *Id.* at 108.  The plaintiff bears the burden to overcome a claim of qualified immunity, and that burden is "heavy," particularly as it relates to the showing that the right at issue was "clearly established."  *Morrow*, 917 F.3d at 874.  "A right is clearly established only if relevant precedent 'ha[s] placed the ... constitutional question beyond debate."  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

A Fourth Amendment excessive force claim requires proof of: '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'"  *Romero v. City of Grapevine, Texas*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir. 1999)).  In determining whether the force used was excessive, and objectively unreasonable, three factors are considered generally considered: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [s]he is actively resist[ed] arrest or attempt[ed] to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The following facts in this case are not disputed: Byrd was at a basketball game at the high school she attended in Defendant MCISD; Byrd was told by assistant principal Golden she could not sit on the visitor side of the court; Byrd returned to the visitor side of the court; Byrd was

8

confronted by Golden and was told to leave the game; Byrd called her mother on her cellphone after Golden told her to leave; When Byrd refused to leave, Defendants Cornelius and Sweetin knocked Byrd to the ground, restrained her there, and handcuffed her.  What is disputed is whether the force used against Byrd was excessive and whether any action by Byrd affected the reasonableness of the officers' use of force against her.  Each of the aforementioned *Graham* factors are relevant to this inquiry: the severity of Byrd's infraction/offense, whether Byrd posed an immediate threat to the safety of the officers or others, and whether Byrd actively resisted arrest/restraint.

The summary judgment evidence relevant to the reasonableness inquiry at issue consists of the Declaration of Byrd, the Affidavits of Cornelius, Sweetin and Golden, and the video evidence Defendants submitted with their Reply.  That video evidence, despite having viewed the 18 second clip closely and repeatedly, does not clearly show anything: it does not discernibly show how Byrd was acting, and towards whom, before she was knocked to the ground, restrained, and handcuffed; does not show how or why the incident escalated; and does not discernibly show, as maintained by Defendants, that Byrd struck anyone, resisted restraint and/or failed to follow directives, or was otherwise combative or recalcitrant.  Defendants' arguments that the video clip is indicative, or evidence, of any conduct on the part of Byrd that justified any force being used against her is patently unreasonable.  The video clip is of extremely poor video and audio quality and, not only is it difficult to distinguish between Byrd and the other participants, it is next to impossible to determine whether Byrd made physical contact with Golden, Cornelius or Sweetin before force was used against her.  The video evidence is, therefore, no evidence at all that would support Defendants' arguments, in the context of any of the *Graham* factors, that the use of force against Byrd was reasonable.

9

That leaves as evidence in this case the statements of Byrd in her Declaration, which conflict with the statements of Cornelius, Sweetin and Golden in their Affidavits, about Byrd's conduct prior to and during the incident about which Byrd complains.  Byrd states in her Declaration that, "At no time did I kick or strike Cornelius in the cheek.  I did not hit Sweetin or any other person.  I was not violent, nor did I attempt to harm anyone.  The force Cornelius used when he kicked my legs from underneath me caused bruising and significant pain."  Byrd Declaration at ¶ 8 (Document No. 51 at 7).  Cornelius, Sweetin and Golden all dispute Byrd's characterization of the incident, and each states in their respective affidavits that Byrd struck Cornelius in the cheek.  Cornelius Affidavit at ¶ 10 (Document No. 47 at 21); Sweetin Affidavit at ¶ 11 (Document No. 47 at 29); Golden Affidavit at ¶ 17 (Document No. 47 at 39).  This dispute in the evidence is a genuine dispute that raises a genuine issue of material fact for trial on the reasonableness of the force used by Defendants Cornelius and Sweetin.  While this disputed evidence relates to one of the *Graham* factors – whether Byrd resisted – the other *Graham* factors support the determination made herein that there are genuine issues of material fact on the reasonableness of the force used against Byrd.  The video evidence submitted Defendants with their Reply, even with its extremely poor audio and video quality, shows that Byrd was quite petite, and posed no real physical threat to either Cornelius or Sweetin.  In addition, Byrd was not, and had not, committed a crime, and could, at most, have been considered to be trespassing once she was instructed to leave the building.  The contents of Byrd's Declaration, coupled the physical disparities between Byrd and Officers Cornelius and Sweetin raise genuine issues of material fact on Byrd's excessive force claim.

As for Defendants' arguments that Byrd's § 1983 excessive force claim fails because she has not come forth with evidence of any injury, Byrd states in her Declaration that she has suffered

"extreme and severe mental and emotional distress, agony, and anxiety."  Byrd Declaration at ¶ 11 (Document No. 51 at 7).  Such injuries, which Byrd has attested to, albeit vaguely, are sufficient to support a § 1983 excessive force claim.  *See Flores v. City of Palacios*, 381 F.3d 391, 400–01 (5th Cir. 2004) ("Our holdings in *Harper*, *Dunn*, and *Petta* clearly established by 2002 that psychological injuries are sufficient to satisfy the injury element of a § 1983 claim for excessive force under the Fourth Amendment.").

Based on the summary judgment evidence in the record, the undersigned concludes that genuine issues of material fact preclude summary judgment on Byrd's § 1983 Fourth Amendment-excessive force claim against Cornelius and Sweetin in their individual capacities.[2]

## V.  Discussion – § 1983 due process claim against MCISD

Byrd asserts a § 1983 claim against MCISD based on what she asserts was the denial of a due process hearing before she was expelled.   According to Byrd, while a hearing was held before the District Superintendent and she was expelled, both she and her mother were told following the incident at the basketball game that they could not come to, or be on, school district property at the risk of being arrested. MCISD seeks summary judgment on Byrd's due process claim, arguing that regardless of what Byrd and her mother were told about their ability to be on school district

---

[2] In an Order entered on July 19, 2021 (Document No. 61), the parties were given additional time to consider and address two recent decisions by the Fifth Circuit Court of Appeals: *T.O. v. Fort Bend Indep. Sch. Dist.*, No. 20-20225, 2021 WL 2461233 (5th Cir. June 17, 2021); and *J.W. v. Paley*, No. 19-20429, 2021 WL 2587555 (5th Cir. June 23, 2021).   Because Defendants Cornelius and Sweetin have not set forth any cogent argument that they could be considered school "officials," as was at issue in *T.O.* and *J.W*, the undersigned concludes, as argued by Byrd in her Additional Briefing (Document No. 63), that the decisions in *T.O.* and *J.W.* do not apply in this case.

property, they were advised of the expulsion hearing in a letter dated November 16, 2017, and chose not to attend.

Defendant MCISD does not argue or dispute that Byrd had a due process right to a hearing prior to her expulsion. Defendant *only* argues that it was Byrd's choice not to participate in that hearing of which she received notice. The shortcoming with this argument is the absence of admissible evidence that Byrd (and her mother) actually received notice of the hearing. There is no evidence of a certified mail return and no competent, admissible evidence of any personal delivery of the letter dated November 16, 2017. All there is in the record is a handwritten notation on the November 16, 2017 letter, signed by "Patrick Page" as "delivered" by him and "resident of 1512 Mustang LP "refused to sign." (Document No. 47 at 43). While Golden states in her Affidavit that the letter is "true and correct copy of th[e] notice," Golden Affidavit at ¶ 23 (Document No. 47 at 40), Byrd and her mother state in their Declarations that they were not "notified of an expulsion hearing that was to take place on November 27, 2017 nor were [they] advised of any rights to appeal." Byrd Declaration at ¶ 9 (Document No. 51 at 7); Gooden Declaration at ¶ 8 (Document No. 51 at 12). Taking the summary judgment evidence on the notice issue in the light most favorable to Byrd, the undersigned concludes that genuine issues of material fact issue on whether Byrd was provided notice of the hearing. As such, and because MCISD based the entirety of its summary judgment argument on the notice issue, MCISD is not entitled to summary judgment on Byrd's § 1983 due process claim.

**VI.    Conclusion and Recommendation**

Based on the foregoing, and the conclusion that the summary judgment evidence raises

12

genuine issues of material fact on both of the remaining claims, the Magistrate Judge

RECOMMENDS that Defendants' Motion for Summary Judgment (Document No. 47) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b).  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 10th day of September, 2021.

Frances H. Stacy
United States Magistrate Judge